IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TERRELL J. LIPKINS, | CASE NO. 5:24-CV-01889-DAR |
| Petitioner, | JUDGE DAVID A. RUIZ |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN CYNTHIA DAVIS, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

### INTRODUCTION

With the aid of counsel, Petitioner Terrell Lipkins, a prisoner in state custody, seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction under § 2254(a) and the matter is referred to me to prepare a Report and Recommendation. (Non-document entry of Oct. 30, 2024). Respondent Warden Cynthia Davis, as Warden of the Southern Ohio Correctional Facility (hereinafter, the State), filed the Return of Writ with the state court record. (ECF #7). Mr. Lipkins filed a Traverse. (ECF #15).

Mr. Lipkins asserts one ground for relief challenging his convictions for murder, felonious assault, improper discharge and handling of a firearm, having a weapon while under a disability, and multiple firearms and repeat-violent-offender specifications. For the reasons below, I recommend the District Court **DISMISS** the ground for relief as not cognizable and **DISMISS** the petition. I further recommend the District Court **DENY** Mr. Lipkins a certificate of appealability (COA).

1

PROCEDURAL HISTORY

A.     **State court factual findings**

The Ohio Court of Appeals, Fifth Appellate District, set forth the facts here. These factual findings are presumed correct unless Mr. Lipkins rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Fifth District determined:

> {¶6} J.N., her adult daughter, M.N., their neighbor, N.H. and his brother, C.T. were in an alley behind J.N.'s home engaged in conversation when a black vehicle with tinted windows and damage to the left rear fender passed by them. They paid little attention to the vehicle, finished their conversation and N.H. and C.T. began to walk home.
>
> {¶7} Before they had moved far from the alley, the same black vehicle returned and a passenger in the rear driver's side vehicle fired seven to ten shots. N.H. and C.T. dropped to the ground and escaped harm, but J.N. was shot in the stomach and doubled over in pain. M.N.'s daughter called 911 and the Canton Police Department was first on the scene.
>
> {¶8} The police officer noted that J.N. suffered a wound that entered and exited her body and he attempted to staunch the bleeding until the ambulance arrived. J.N.'s wounds proved to be fatal, the bullet passing through her back, then arteries and veins as well as her stomach. The coroner's office ruled that the death was a homicide as a result of a gunshot wound.
>
> {¶9} The Canton Police Department began investigating the shooting within minutes of the 911 call. From N.H. and C.T., they learned that the vehicle was a black Malibu with a Spitzer dealership plate and that the weapon used had an extended magazine. While at the scene, detectives from the Canton Police Department began canvassing the neighborhood with the hope of finding a residential security camera that may have recorded the offense. The detectives did find a such recording in a camera about a block away from the scene of the shooting.
>
> {¶10} Two witnesses, N.H. and A.F., noticed a pink steering wheel cover in the Malibu. N.H. recalled that the gun was black, had an extended magazine and that seven to ten shots were fired. The home of the decedent, J.N., was hit by two bullets and a neighboring house was struck. Windows in vehicles were shattered and the vehicle bodies were damaged by bullets.
>
> {¶11} The Canton Police Department issued an alert to be on the lookout for a black Malibu with a Spitzer plate frame and a visible scratch across a corner panel. They also investigated the link to the local Chevrolet dealer, Spitzer, where a sales person

recalled selling a 2014 black Chevrolet Malibu with tinted windows and that the buyer had asked if the tint was legal. The Canton Police Department, with the assistance of the authority of the trial court, obtained a copy of the purchase agreement and discovered that the vehicle was sold to Sabriah Johnson, the mother of Lipkins' daughter.

{¶12} The Canton Police Department knew that Lipkins socialized with Javier Blood and that Blood was obligated to wear a GPS monitor that would allow his movements to be tracked. The Canton Police Department reviewed GPS record of Blood's whereabouts on the day of the shooting and after discovering the addresses of locations that he visited, an officer reviewed video recordings from security cameras at the different locations. The videos showed that Blood and Lipkins traveled together, beginning at approximately 1:45 p.m., and that they were using a dark Chevrolet Malibu with a pink steering wheel cover. Lipkins and Blood appeared in videos from five different commercial establishments leading up to the time of the shooting.

{¶13} As they approached the scene of the shooting, two Ring cameras tracked their progress. The cameras showed the Malibu circle the area once and then gunshots were heard on the second pass. J.N. was shot at 8:37 p.m. and the 911 call was made at 8:38 p.m. The GPS monitor traced the progress of Blood and Lipkins toward the shooting just minutes before it occurred. A different GPS system showed that the speed of the vehicle increased from 23 miles per hour before or near the time of the shooting then increased to a speeds of 53, 59 and 71 miles per hour after the shooting.

{¶14} The Canton Police Department recovered shell casings from the scene and determined that they were fired from a Glock, nine millimeter, hand gun. Based upon witness statements, the police concluded that the gun was fitted with an extended magazine. Sabriah Johnson had purchased a Glock nine millimeter hand gun in February 2021. And, upon searching Johnson's residence, they discovered video from a door bell camera that showed Lipkins with a hand gun and extended magazine, wearing a balaclava style mask and a medallion, the latter two items being the same as seen in videos of Blood and Lipkins recovered from business cameras on the day of the shooting.

{¶15} While at Johnson's residence, the police also discovered the white t-shirt with the distinctive graphic and the black pants Lipkins wore on the day of the shooting. A forensic expert confirmed that the shirt and the pants contained gunshot residue. The medallion he wore in the videos taken on the day of the shooting was on Lipkins' person when he was taken into custody.

{¶16} The officers did not recover the gun used in the shooting, but they did discover two boxes of 9mm ammunition at Johnson's home.

3

{¶17} The vehicle was recovered in Barberton, Ohio on August 11, 2021 and the police found within it a pink steering wheel cover, Lipkins' social security card, and the Spitzer plate still attached to the vehicle.

(ECF #7-1 at PageID 220-23; *see also State v. Lipkins*, Nos. 2022-CA-53, 2022-CA-54, 2023 WL 2863541, at *1-3 (Ohio Ct. App. Apr. 10, 2023), *appeal not allowed*, 213 N.E.3d 713 (Ohio 2023) (table)).

B.  **Direct appeal**

Through counsel, Mr. Lipkins timely appealed his convictions to the Fifth District raising five assignments of error:

1. The state failed to present sufficient evidence to sustain a conviction against [Mr. Lipkins] and the convictions must be reversed;

2. [Mr. Lipkins]' conviction is against the manifest weight of the evidence and must be reversed;

3. [Mr. Lipkins]' rights under the Eighth and Fourteenth Amendments to the United States Constitution were violated as he was denied appellate review of his sentence under Ohio Rev. Code § 2953.08 as [§ 2953.08(D)(3)] unconstitutionally prohibits review of a sentence imposed for murder;

4. [Mr. Lipkins]' rights to present a defense, to due process, and to a fundamentally fair trial were denied by the trial court's limitation on evidence demonstrating that the principal offender to which [Mr. Lipkins] was alleged to have aided and abetted was acquitted of all charges, and by permitting evidence of [Mr. Lipkins]' prior bad acts in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments and Article I, Sections 2, 9, 10, and 16 of the Ohio Constitution; and

5. The trial court abused its discretion when it sentenced [Mr. Lipkins] on offenses that should have merged as a matter of law.

(*See* ECF #7-1 at PageID 135) (cleaned up). On April 10, 2023, the Fifth District affirmed. (*See id.* at PageID 218; *see also Lipkins*, 2023 WL 2863541).

4

On May 25, 2023, through counsel, Mr. Lipkins timely appealed to the Supreme Court of Ohio, where he advanced one proposition of law:

> In a criminal proceeding involving the charge of complicity, evidence of a co-defendant's conviction or acquittal generally is not relevant and is inadmissible as evidence of the defendant's guilt or innocence; however evidence of a co-defendant's acquittal may become relevant and then presented by defendant to rebut the claim by the prosecution that the co-defendant was the principal offender of the offense to which the defendant is charged with complicity, or evidence of a co-defendant's conviction may become relevant and then presented by an opposing party to rebut the claim by the proponent of evidence that the co-defendant is innocent.

(*Id.* at PageID 250). On August 1, 2023, the Supreme Court of Ohio declined to hear his appeal. (*Id.* at PageID 282; *see also Lipkins*, 213 N.E.3d 713).

## FEDERAL HABEAS PETITION

Before this Court Mr. Lipkins raises one ground for habeas relief, arguing he was denied due process and the right to a fair trial by being deprived of his right to present a defense. (ECF #1 at PageID 6).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Lipkins' habeas petition. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" so AEDPA acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Habeas courts review the last-explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991).

5

Accordingly, habeas relief cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

For the purposes of § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court's decision is "contrary" to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* at 405. The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Id.* A state court does not act contrary to Supreme Court precedent when the precedent of the Supreme Court is ambiguous or nonexistent. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court's decision involves an "unreasonable application" of Supreme Court precedent if (1) the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case or (2) the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context

6

where it should apply. *Williams*, 529 U.S. at 407. A state-court decision must be "objectively unreasonable" to have unreasonably applied Supreme Court precedent which requires more than the decision being "erroneous" or "incorrect." *See id.* at 409-11. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), a state court's factual determinations stand unless they too are objectively unreasonable in light of the evidence presented in state court. *See Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct" unless the petitioner offers clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2554(e)(1).

Comity principles also require federal courts to defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state

7

prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## ANALYSIS

Mr. Lipkins argues he was denied the ability to present a defense to charges of aiding and abetting his co-defendant in committing a murder because he was barred from introducing evidence that his co-defendant had been acquitted of the principal offenses. (ECF #1 at PageID 22-24). The State argues the ground for relief is not cognizable because the exclusion of evidence about the acquittal of Mr. Lipkins' co-defendant was not a denial of fundamental fairness. (ECF #7 at PageID 50-56). I agree with the State.

A state court's decision to admit or exclude evidence is usually a matter of state law. Generally, federal habeas review is available only for claims that "challenge the legality of [the petitioner's] custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Put another way, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F.App'x 575, 582 (6th Cir. 2010); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (quotation omitted); *see also Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted).

8

Federal habeas review is generally not available to decide whether a state court complied with state law or state procedural requirements. *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). A federal habeas court "does not function as another state appellate court to review a state court's interpretation of its own law or procedure." *Id.* Instead, a federal habeas court is bound by "[a] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

A petitioner cannot justify habeas relief simply by asserting that a state-law error violates the federal constitution. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). But habeas relief may be available if an error of state law made the criminal process "fundamentally unfair." *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). The habeas petitioner must show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Id.*

The right to present a meaningful defense is "a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). But the right to present a defense does not relieve a criminal defendant of the obligation to comply with the rules of evidence. *Clark v. Arizona*, 548 U.S. 735, 770 (2006). Rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "arbitrary or disproportionate to the purposes they are designed to serve." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). "[W]ell-established rules of evidence [that] permit trial judges to exclude evidence" under certain circumstances are unlikely to violate a defendant's constitutional rights. *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).

9

Mr. Lipkins argues that to convict him for complicity, Ohio law requires the State show a principal committed the offense. (ECF #15 at PageID 932) (citing *State v. Perryman* 359 N.E.2d 1040 (Ohio 1976) and Ohio Rev. Code 2923.03(C)). He contends the state courts' decision prohibiting him from introducing evidence that his co-defendant, Mr. Blood, was acquitted of the principal offense rendered him unable to present a defense because "[t]he acquittal of the principal actor is absolutely relevant to the determination of whether a co-conspirator acted in conformity with the other person's conduct." (ECF #1-2 at PageID 24).

This argument falls flat in the face of established Ohio law. Ohio's complicity statute expressly forecloses Mr. Lipkins' intended defense, providing: "[i]t is no defense to a charge [of complicity] that no person with whom the accused was in complicity has been convicted as a principal offender." Ohio Rev. Code § 2923.03(B). As the Fifth District held on direct appeal:

> {¶75} Lipkins discretely admits the weakness in his argument when he cites us to *State v. Hinzman*, 8th Dist. Cuyahoga No. 92767, 2010-Ohio-771 ¶ 27-28, where the Eighth District held that a "co-defendant's acquittal cannot be used as evidence of an accused's innocence. *See State v. Tutt* (Apr. 12, 1986), Warren App. No. CA85-09-056 ("[a] co-defendant's conviction can no more be used as evidence against an accused as a co-defendant's acquittal could be used by the accused as evidence of his innocence"). * * * In other words, Dillon's acquittal does not have the tendency to make a fact of consequence any more or less probable than it would be without the evidence."
>
> {¶76} We agree with the logic used by the courts in *Hinzman* and *Tutt* and find that the trial court did not err by refusing to permit Lipkins to present evidence of Blood's acquittal in his trial.

(ECF #7-1 at PageID 239). A federal habeas court is bound by "[a] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Thus, the federal court must defer to the Fifth District's holding that Mr. Lipkins's intended defense was unavailable to him under established Ohio law.

10

Mr. Lipkins does not show how this rule is arbitrary or disproportionate to the purposes it was intended to serve. He cites to *Washington v. Texas*, 388 U.S. 14 (1967), as analogous because the arbitrary statute there precluded a defendant from calling as a witness a person who had been charged and convicted of the same crime. (ECF #1-2 at PageID 24; ECF #15 at PageID 935-36). But the Supreme Court found that statute arbitrary because it allowed the prosecution to call that person as a witness, functionally allowing the very perjury the statute sought to prevent so long as the prosecution thought it advantageous. *See Holmes*, 547 U.S. at 325 (discussing *Washington*). Here, Ohio's rule applies evenly to the prosecution and the defense, as the Fifth District pointed out on direct appeal. (*See* ECF #7-1 at PageID 239) ("'[a] co-defendant's conviction can no more be used as evidence against an accused as a co-defendant's acquittal could be used by the accused as evidence of his innocence'") (quoting *State v. Tutt*, No. CA85-09-056, 1986 WL 4506, at *8 (Ohio Ct. App. Apr. 14, 1986)). Mr. Lipkins does not explain how the Ohio rule otherwise defeats its intended purposes.

Ohio is not an outlier in forbidding this defense; federal law similarly denies the exact same defense under its complicity statute, 18 U.S.C. § 2. As the Sixth Circuit has summarized: "there is no requirement that a de facto principal be convicted of an offense prior to convicting someone as an aider and abettor, nor is there even a bar to prosecuting someone as an aider and abettor after an alleged de facto principal is acquitted." *United States v. Stewart*, 306 F.3d 295, 307 (6th Cir. 2002) (quotation omitted); *see also Standefer v. United States*, 447 U.S. 10, 20 (1980) ("[A]ll participants in conduct violating a federal criminal statute are 'principals.' As such, they are punishable for their criminal conduct; the fate of other participants is irrelevant."). It is hard to see

11

how Ohio's rule violates federal constitutional protections of fundamental fairness when an analogous federal rule does not.

Setting aside that Mr. Lipkins' defense was legally unavailable, his argument that the acquittal of his co-defendant is exculpatory of complicity in the shooting is also logically unsound. Mr. Lipkins' first argument in his petition is that it is impossible for him to have aided and abetted his co-defendant in committing the shooting because his co-defendant was acquitted of the shooting. (*See* ECF #1-2 at PageID 23-24). To Mr. Lipkins, if his co-defendant is not guilty of the shooting, he must be not guilty of aiding and abetting the shooting. But the law does not link Mr. Lipkins' fate to his co-defendant. The State need not establish the identity of the principal offender to convict a defendant of complicity by aiding and abetting. *Johnson v. Bradshaw*, 493 F.App'x 666, 671 (6th Cir. 2012) (citing *In re T.K.*, 849 N.E.2d 286, 288 (Ohio 2006)). Rather, "[to] support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *In re T.K.*, 849 N.E.2d at 288. Whether Mr. Lipkins' co-defendant was (or was not) the shooter is immaterial to whether Mr. Lipkins supported, assisted, encouraged, or cooperated with the shooter, whoever that person is. And there was independent evidence showing Mr. Lipkins drove the car used in the drive-by shooting:

> {¶42} The Appellee provided evidence connecting Lipkins to the vehicle as well as video and GPS documentation tracing his movements for several hours prior to the offense. Despite his assertion to the contrary, Lipkins was seen leaving the vehicle after leaving the Gables of Canton. He and Blood stopped at BellStore and were seen leaving the store around 8:28 p.m. and the vehicle was tracked to the scene of the shooting which occurred approximately ten minutes later.

> {¶43} The vehicle was recovered and searched. The officers not only found the pink steering wheel cover described by the witnesses, but they also found Lipkins' Social Security Card in the vehicle. After obtaining a warrant, the officers searched the residence where Lipkins resided and recovered clothing that matched what he was wearing prior to the shooting. The clothing tested positive for gunpowder residue confirming that it was in the vicinity of a weapon when it was fired.

(ECF #7-1 at PageID 229). That Mr. Blood was acquitted of the drive-by shooting does not negate the other evidence that Mr. Lipkins aided the drive-by shooting by driving the car.

In his Traverse, Mr. Lipkins changes his position, arguing he "did not seek to introduce evidence at trial of the principal offender's acquittal to prove Lipkins' factual innocence. Rather, Lipkins sought to introduce evidence of the principal offender's acquittal to establish that the state could not meet its required burden: to prove that a principal committed the offense." (ECF #15 at PageID 933). This argument also is illogical. To start, the State proved that someone committed a drive-by shooting, as the Fifth District found:

> {¶54} In this case, the record shows that Lipkins and Blood drove past C.T. and N.H. once, then when they passed by a second time, seven to ten shots were fired in the direction of C.T., N.H., J.N. and M.N., causing both C.T. and N.H. to drop to the ground. The bullets struck and eventually killed J.N. and caused damage to homes and vehicles in the area. The shooting was not accidental and by all accounts was directed toward the persons talking by the side of the road. The second drive by, the number of shots fired, the damage to property and the reaction of the victims all support the conclusion that the shooting was done with knowledge that the bullets were likely to strike the victims.

(ECF #7-1 at PageID 233). That Mr. Lipkins' co-defendant was found not guilty of the shooting does not mean the shooting did not occur. Nor does his co-defendant's acquittal in a separate trial mean the prosecution failed to prove in Mr. Lipkins' trial that a principal committed the shooting, as the two proceedings are independent.

In sum, Mr. Lipkins' argument that his trial was fundamentally unfair because he was denied the ability to defend himself by introducing evidence that his co-defendant was acquitted is

13

without merit. Ohio law forecloses this defense and that law does not violate the federal constitution's guarantee of fundamental fairness given that federal courts also bar the defense in the same situation. Moreover, the fact that one person was acquitted of the drive-by shooting has no logical bearing on whether Mr. Lipkins aided that shooting by driving the car and does not suggest the State failed to show an offense occurred.

I thus recommend the district court **DISMISS** the ground for relief as not cognizable.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a COA and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not needed to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). Mr. Lipkins has not made a substantial showing that he was denied any federal constitutional right. Jurists of reason would not find it debatable

14

whether the ground for relief is a meritorious federal constitutional claim. I thus recommend the District Court **DENY** Mr. Lipkins a COA.

### CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DISMISS** the ground for relief as not cognizable and **DISMISS** the petition. I further recommend the District Court **DENY** Mr. Lipkins a COA.

Dated: November 17, 2025

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

15